UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE, a minor, by her next
friend and parent, E.L.,

|  |  |  |
|---|---|---|
| Plaintiff, | ) | Case No. 2:19-cv-10166 |
|  | ) |  |
| vs. | ) |  |
|  | ) |  |
| PLYMOUTH-CANTON | ) | Hon. |
| COMMUNITY SCHOOLS, | ) |  |
| DANIELLE BEAN, ANGEL | ) |  |
| LETT, MONTYNE BARBEE, | ) |  |
| ELIZABETH MOSHER, and | ) |  |
| HAL HEARD III, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

---

Jennifer B. Salvatore (P66640)
Nakisha Chaney (P65066)
SALVATORE PRESCOTT & PORTER, PLLC
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
*salvatore@spplawyers.com*
*chaney@spplawyers.com*

---

## **COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, JANE DOE, a minor, through her next friend and by

and through her attorneys, SALVATORE PRESCOTT & PORTER, PLLC, and

hereby complains of Defendants PLYMOUTH-CANTON COMMUNITY

SCHOOLS, DANIELLE BEAN, ANGEL LETT, MONTYNE BARBEE, ELIZABETH MOSHER, and HAL HEARD III, as follows:

## **INTRODUCTION**

This case centers on a school district whose deliberate indifference to the extreme and ongoing sex-based bullying of Plaintiff Jane Doe by a male student led her to attempt suicide, after she tried—repeatedly and unavailingly—to secure help and protection from District officials.

The District's failure to take appropriate action to respond to the severe harassment Plaintiff was experiencing is astonishing given that District policies make clear that it should have done a prompt investigation and otherwise treated this as a Title IX matter (it did not). Tragically, Plaintiff's suicide attempt was not an isolated incident. Three Plymouth-Canton high school students have taken their lives in the past year. The District's abdication of its legal duties to address gender-based harassment could well have cost another student her life.

In addition to Defendants' deliberate indifference to the sex-based bullying of Jane Doe over the span of more than a year, Defendants have also failed to provide basic accommodations to ensure that Jane Doe's education would not be affected by the harassment. Jane Doe currently is not able to attend school on site because of anxiety and post-traumatic stress related to the harassment. The District's response was to offer only *two hours a week* of off-site tutoring, which did not begin until

November 14, 2018, nearly two months after Plaintiff's last day of school on September 18, 2018.[1]  As a result of the District's on-going indifference, the harm and injury to Jane Doe is ongoing.

## PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff Jane Doe is a minor who resides in Wayne County, Michigan. At the time of the sexual harassment described in this Complaint, plaintiff was 14- and 15-years old and was in her freshman and sophomore years at Canton High School.

2.    Defendant Plymouth-Canton Community Schools ("the District") is a public school district located in Canton, Michigan.

3.    Defendant Danielle Bean is an individual who resides within the Eastern District of Michigan.  At times relevant to this Complaint, she was a counselor at Canton High School.

4.    Defendant Angel Lett is an individual who resides within the Eastern District of Michigan.  At times relevant to this Complaint, she was the Assistant Principal at Salem High School.

---

[1] The District eventually increased this to ten hours in 2019, in response to the threat of legal action.

5.     Defendant Montyne Barbee is an individual who resides within the Eastern District of Michigan.  At times relevant to this Complaint, she was the Assistant Principal at Canton High School.

6.     Defendant Elizabeth Mosher is an individual who resides within the Eastern District of Michigan. At times relevant to this Complaint, she was the Director of Secondary Education for the Plymouth-Canton Community Schools.

7.     Defendant Hal Heard III is an individual who resides within the Eastern District of Michigan. At times relevant to this Complaint, he was the Principal of Canton High School.

8.     This Complaint refers to the student who sexually harassed Jane Doe as "John Roe."  John Roe was a student at Salem High School when he sexually harassed Jane Doe.  Upon information and belief, John Roe stopped attending Salem High School on or about November of 2017.

9.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, which grants district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

10.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over: (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom, or usage, of any right,

4

privilege, or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because all defendants reside in this district, and the events giving rise to the claims occurred in this district.

## APPLICABLE LAW AND POLICY

12.     Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), states:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance...

13.     Title IX is implemented through the Code of Federal Regulations. *See* 34 C.F.R. Part 106. 34 C.F.R. § 106.8(b) provides:

> ...A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part.

14.     In *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1988), the United States Supreme Court recognized that a recipient of federal educational funds intentionally violates Title IX, and is subject to a private damages

5

action, where the recipient is "deliberately indifferent" to known acts of teacher-student discrimination.

15.    In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the United States Supreme Court extended the private damages action recognized in *Gebser* to cases where the harasser is a student, rather than a teacher.

16.    *Davis* held that a complainant may prevail in a private Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is:

   a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and

   b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school.

*Davis*, 526 U.S. at 1669-76.

17.    The Fourteenth Amendment to the United States Constitution provides in pertinent part that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

18.    Plymouth-Canton Community Schools published an Anti-Harassment Policy ("the Policy"). The Policy prohibits sexual harassment, as defined in Title VII of the Civil Rights Act of 1964 and Title IX of the Educational Amendments of 1972. Included in the definition of sexual harassment is behavior that constitutes, in relevant part:

- unwanted physical contact;

- unwelcome use of sexually degrading language, jokes or innuendoes;

- unwelcome obscene gestures, a pattern of conduct, which can be subtle in nature, that is intended to create or has the effect of creating discomfort and/or humiliation; and

- verbal, nonverbal or physical aggression, intimidation, or hostility based on sex that does not involve conduct of a sexual nature.

19.     While the Policy describes Board-designated "Anti-Harassment Compliance Officers," it does not identify an overarching Title IX compliance coordinator. It is unclear whether at the relevant time the District even had a Title IX Coordinator.

20.     The Policy describes an Investigation and Complaint Procedure that has two tracks: an Informal Complaint Procedure or a Formal Complaint Procedure. The informal procedure is not required as a precursor to filing a formal complaint.

21.     In order to participate in an "informal procedure," both the target of harassment and the accused must agree to use an informal process, which may include the target "inform[ing] the harasser that the conduct is unwelcome and should stop" or by a facilitated meeting between a Compliance Officer, the victim, and the accused. The Policy states that with "certain types of unlawful harassment,

such as sexual harassment, the Compliance Officer may advise against the use of the informal complaint process."

22.     The Formal Complaint Procedure may be initiated by the filing of a complaint, orally or in writing, with a teacher, administrator, or Compliance Officer.

23.     The Policy requires that the recipient of a complaint "must report such information to the Compliance Officer or designee ("CO") within two (2) business days." It also requires the following:

- The CO "should keep the parties informed of the status of the investigation and the decision-making process."

- The CO "will consider whether any action should be taken in the investigatory phase to protect the Complainant from further harassment or retaliation, including, but not limited to, a change of work assignment or schedule for the Complainant and or the alleged harasser."

- Within two (2) business days of receiving the complaint, the CO will initiate a formal investigation.

- The CO will attempt to complete an investigation into the allegations of harassment/retaliation within fifteen (15) business days of receiving the formal complaint. The investigation will include:

  o   interviews with the Complainant;

- o   interviews with the Respondent;

- o   interviews with any other witnesses;

- o   consideration of any other relevant information.

- At the conclusion of the investigation, the CO shall prepare and deliver a written report to the Superintendent that summarizes the evidence gathered during the investigation and provides recommendations based on the evidence . . . a preponderance of evidence standard will be used.

- Absent extenuating circumstances, within ten (10) school days of receiving the report of the CO, the Superintendent must either issue a final decision regarding whether the complaint of harassment has been substantiated or request further investigation.

- A copy of the Superintendent's final decision will be delivered to both the Complainant and the Respondent.

- Any act of retaliation against a person who has made a report or filed a complaint . . . is prohibited.

## FACTUAL ALLEGATIONS

24.   Plaintiff Jane Doe is a student enrolled in the Plymouth-Canton Educational Park in Canton, Michigan, which is a 305-acre campus comprised of three large comprehensive high schools: Canton, Plymouth, and Salem.

25.     The Educational Park is part of the Plymouth-Canton Community School District. It houses 280 teachers, counselors, and other administrators and has a total student population of over 6,200 in grades nine through twelve. While each student belongs to one campus, the schools share facilities and students can register for classes on each of the campuses.

26.     Through September 2016, Jane Doe was a studious Canton high school student with A and B average grades. She is a distinguished member of its award-winning marching band.

27.     A few weeks prior to the start of her freshman year of high school, Jane Doe briefly dated a Salem high school student, John Roe. They broke up after only three to four weeks, in August of 2016.

28.     When Jane Doe and John Roe returned to school, John Roe immediately began to stalk and intimidate Jane Doe by calling her names like "slut" and "whore" in the hallways, flipping her off, and waiting for her outside of her classrooms.

29.     On October 14, 2016, at a school football game, John Roe pointed at and shouted the same insults to Jane Doe while she played in the marching band in the stadium stands.

*First Complaint*

30.     On December 9, 2016, John Roe told a friend of Jane Doe's that he hoped she "gets raped again." This comment was more than a grotesque insult, as Jane Doe had confided in John Roe during their brief relationship that she had been sexually assaulted by a babysitter and her husband when she was a toddler.

31.     After this incident, Jane Doe verbally reported the harassment to her high school counselor, Defendant Danielle Bean, and wrote out a statement regarding the incident.

32.     Defendant Bean responded by notifying John Roe's parent, as well as the Salem High School Assistant Principal, Defendant Angel Lett, about the incident.

33.     Defendant Bean also called Jane Doe's mom and told her that she would "handle it."

34.     Defendant Lett also called Plaintiff's mom to apologize and to say that they would "handle it."

35.     Jane Doe was not informed of any measures that were taken, other than a verbal reprimand to John Roe, to investigate or respond to her complaint.

36.     Neither Jane Doe nor her mother was apprised of the identity of the District's Title IX coordinator, provided with a copy of its Title IX policy, or given any explanation of the District's Title IX complaint procedure.

*Second Complaint*

37.     On February 25, 2017, both Jane Doe and John Roe were present at the "Snowcoming" school dance.

38.     In front of a large group of students, John Roe looked right at Jane Doe and yelled, "I hope she gets raped again!"

39.     The following Monday, February 27, Jane Doe reported this harassment to her counselor, Defendant Bean.

40.     Defendants Bean and Lett each again called Jane Doe's mom, telling her that they had taken care of the situation. Specifically, Ms. Lett said that John Roe had been warned to stop.

41.     Once again, Defendants did not engage the District's Title IX procedure in any way.

*Third Complaint*

42.     Throughout March of 2017, John Roe continued to verbally harass Jane Doe in the hallways, wait for her outside of class, and follow her around campus.

43.     On March 31, 2017, the day before Spring Break, John Roe and his friend stuck up their middle fingers at Jane Doe in the hallway and called her a "whore." The friend later admitted to doing this and apologized.

44.     On or around the day of this incident, a School Resource Officer (SRO), SRO Jagst, called Plaintiff's mother to report that he had seen John Roe's friend flipping off Jane Doe on a surveillance video but that there was no sound.

45.     During Spring Break, Jane Roe's home was egged and toilet papered, and the word "whore" was written in dog feces on the garage door. All of the tires on the car parked in her driveway were flattened.

46.     When Jane Doe returned to school after Spring Break on April 10, 2017, she reported this harassment to Defendant Bean.

47.     On April 11, 2017, SRO Jagst called Plaintiff's mother to say that he and Defendant Lett were going to investigate Jane Doe's complaint.

48.     Defendant Plymouth-Canton Community Schools' Anti-Harassment Policy designates a school employee, the Compliance Officer, as the District official responsible for investigating reports of Title IX violations; SROs are not named in the Title IX policy, nor are they District employees.[2] For this reason, SRO Jagst's name does not appear on the Staff Directory for Plymouth-Canton Community Schools.

49.     For the third time, Defendants disregarded and failed to invoke the District's Title IX procedure.

---

[2] Nor is Defendant Lett, Assistant Principal of Salem High School, the individual charged with conducting investigations under the Policy.

*Plaintiff's Suicide Attempt and Hospitalization*

50.    Within days of her house being egged and the word "whore" written on her garage door, Jane Doe researched how many Adderall it would take to kill herself.  She then located a family member's prescription medicine and ingested 90 Adderall in an attempt to take her own life.

51.    Jane Doe posted on social media that she had taken the pills and wanted to die.

52.    Despite having ingested this high a dose of Adderall, Jane Doe went to school that morning, attended her first two classes, and spent the following four hours walking around school with two friends, as she was too agitated to sit in class.

53.    As Jane Doe wandered confusedly around the school, she was seen and directed by at least three school personnel, and yet no one sought medical attention for her.

54.    At the end of the school day, Jane Doe's friends guided her onto her school bus, although she has no recollection of how she got home.

55.    That night, when Jane Doe's mother realized what had happened, she rushed Jane Doe to the emergency room at the University of Michigan Hospital.

56.    Upon arrival at the hospital, Jane Doe's kidneys were shutting down.

57.    As a result of the overdose, Jane Doe hallucinated for several days on the medical ward, often crying out "why won't [John Roe] leave me alone" and "why

14

is he doing these things, I can't take it anymore, everyone hates me, I am a whore. They need to know my thirteen reasons why."

58.     Once she was stabilized from the physical effects of the Adderall, Jane Doe was admitted to the Child and Adolescent Psychiatric Unit, where she spent two weeks detoxing from the overdose and receiving mental health evaluations and therapy.

59.     During this time, Jane Doe was diagnosed with PTSD and Major Depression.

60.     On April 19, 2017, while Jane Doe was hospitalized, SRO Jagst contacted Plaintiff's mother to discuss the March 31st incident in which John Roe and his friend had stuck up their middle fingers at Jane Doe in the hallway and called her a "whore."

61.     During this conversation, SRO Jagst told Plaintiff's mother that he had interviewed two students, determined that "kids will be kids," and informed her that John Roe's friend had admitted to flipping off Jane Doe.

62.     SRO Jagst was not designated in the District's Title IX policies as the individual responsible for conducting investigations of complaints of discrimination, nor was he even an employee of the District.

63.     SRO Jagst did not know about Plaintiff's suicide attempt, so Plaintiff's mother informed him of what had been occurring with Jane Doe.

64.     SRO Jagst said he was working on a report and would inform Plaintiff's mother when it was finished. However, neither Plaintiff nor her mother has ever received a report from SRO Jagst.

65.     On or around May 2, 2017, Plaintiff's mother contacted the District's Director of Secondary Education, Defendant Elizabeth Mosher, to complain of Jane Doe's harassment and inform her of her daughter's resulting suicide attempt.

### Return to School and Fourth Complaint

66.     On May 3rd, 2017, Jane Doe and her mother met with Canton Principal, Defendant Hal Heard III, Canton Assistant Principal, Defendant Montyne Barbee, and Defendant Bean to discuss a plan for Jane Doe to return to school.

67.     Defendants Heard, Barbee and Bean informed Jane Doe and her mother that she would have to change her class schedule if she wanted to be certain she would not have a class in the same building as John Roe.

68.     In addition, Jane Doe's teachers were told that she would be allowed to access a "Zen Room" and/or her counselor whenever necessary.

69.     The next day, May 4, 2017, Jane Doe returned to school.

70.     On May 19, 2017, John Roe approached Jane Doe, walked next to her on the path between schools, in the hallway of one building, and up the stairs.

71.     Jane Doe went immediately to the office and reported this incident.

16

72.    That same day, Plaintiff's mother reached out again to Defendant Mosher, having never heard back from her since their discussion on May 2nd.

73.    More than three weeks later, on May 26, 2017, Defendant Mosher emailed Plaintiff's mom to inform her that she and Defendant Lett would be investigating, but that she could not disclose matters pertaining to the specific discipline of John Roe.

***Fifth and Sixth Complaints***

74.    Despite Defendants' verbal warnings to John Roe and their requirement that Jane Doe change her class schedule, Jane Doe continued to run into John Roe while at school, which caused her significant emotional distress.

75.    On June 1 and again on June 9, 2017, Jane Doe encountered John Roe during the school day, and both times she reported it to school administrators.

76.    In or around early June, Jane Doe had to withdraw from her math class because she was receiving a failing grade due to the ongoing harassment and her resultant hospitalization.

77.    On June 2, 2017, Jane Doe filed a police report with SRO Jagst, detailing several instances of harassment over the prior school year.

*Problems Continuing Into the Next School Year*

78.　Before school began for the 2017-2018 school year (Plaintiff's sophomore year), Plaintiff's mother requested a meeting with Defendants Barbee and Bean to make sure that Jane Doe would not cross paths with John Roe that year.

79.　Defendants indicated that the two students would not have any classes together or be in the same building.

80.　Despite this assurance, John Roe followed Jane Doe to her classes on the first day of school.

81.　When Jane Doe complained to Defendant Barbee about this, she was required to change her classes once again.

*Seventh Complaint*

82.　On September 8 and 15, 2017, while Jane Doe was engaged in band activities, John Roe showed up and stood staring at her.

83.　On September 18, 2017, Jane Doe and her mother attended a meeting with Defendant Heard, Defendant Barbee, Defendant Bean, SRO Jagst, and another administrator. During this meeting Jane Doe repeatedly informed everyone present that she did not feel safe at school.

84.　Jane Doe left this meeting so distraught that her mother asked Defendant Barbee not to interview Jane Doe without a parent present.

*Eighth Complaint*

85.     On September 19, 2017, John Roe crossed paths with Jane Doe between schools, came up close to her, and shoved her into a metal fence, injuring her hand.

86.     Jane Doe reported this incident to Defendant Barbee.

87.     Jane Doe then attempted to participate in band practice, but ended up having to visit urgent care because her hand was hurting so badly. She was diagnosed as having bruising but no fracture.

88.     After this incident, Jane Doe stopped attending school, out of fear for her physical safety.

89.     Jane Doe began taking online classes, but wanted to continue to participate in marching band. However, she was told that she would not be permitted to participate in band if she was not present on campus for classes.

90.     On October 2, 2017, SRO Jagst contacted Plaintiff's mother to ask if Jane Doe wanted to press charges against John Roe for slamming her into a metal fence.  Plaintiff's mother informed him that she would like to press charges.

91.     SRO Jagst then indicated that his investigation was complete. When pressed as to how the investigation could be complete since Jane Doe had not yet been interviewed, SRO Jagst replied that he had not interviewed Jane Doe because her mother had not wanted her to be questioned without a parent present. Upon hearing this, Plaintiff's mother offered to bring Jane Doe in for an interview, but

SRO Jagst told her this was not necessary because he had enough information already.

92.     SRO Jagst was not an employee of Defendant Plymouth-Canton Community Schools, nor was an SRO designated in the District's Anti-Harassment Policy as the individual charged with investigating reports of Title IX violations.

93.     On October 9-20, 2017, Jane Doe enrolled in a treatment program for intensive treatment for her on-going anxiety and depression.

94.     On October 20, 2017, upon completion of this program, Jane Doe returned to school on a reduced schedule.

95.     Because Defendants had taken no measures to protect Jane Doe's safety, Plaintiff's mother petitioned a court for a personal protection order ("PPO") against John Roe, which was issued by the court on October 25, 2017.

96.     On October 31, 2017, having heard nothing from SRO Jagst since October 2nd when she had asked him to file charges against John Roe, Plaintiff's mother followed up with the Canton Police to find out the status of the investigation into the September 19th incident in which John Roe had pushed Jane Doe into a metal fence.

97.     Plaintiff's mother was informed that the case had been closed on October 17th for lack of evidence.

98.    Jane Doe had never been interviewed by the police or anyone else regarding this incident.

**Ninth Complaint**

99.    Despite the PPO against him, and the multiple verbal warnings he had received, on October 31 and November 1, 2017, John Roe was present in the hallway in which Jane Doe was attending class.  John Roe stood there staring at Jane Doe.

100.    Jane Doe reported this to the District, and SRO Colthurst responded, suggesting that Jane Doe take a different route, through the North Tower, and that if John Roe still appeared they would know that he was following her.

101.    SRO Colthurst also suggested to Jane Doe that the PPO did not mandate that John Roe not be within Jane Doe's field of vision.

102.    On November 2, 2017, Jane Doe arrived at school and was greeted by SRO Colthurst, who wanted to know why she was in the North Tower fifteen minutes early. She explained that she often arrived early to school in order to get something to eat before class. SRO Colthurst continued to question Jane Doe without her parent present, and seemed to suggest that she was trying to run into John Roe by arriving early.

**Tenth Complaint**

103.    Later that day, John Roe passed Jane Doe on the path between schools and grabbed the sleeve of her sweatshirt. Jane Doe reported this incident and was

interviewed by Defendant Barbee and SRO Colthurst, with her mother on speaker phone.

***The Defendants' Failure to Protect Plaintiff from Repeated Harassment***

104. Despite Plaintiff having made no fewer than ten complaints about John Roe's conduct to no fewer than five different employees of Defendant Plymouth-Canton Community Schools over the course of more than a year, nothing was done to successfully protect Plaintiff from his ongoing harassment and assaults.

105. The verbal warnings allegedly given to John Roe by Defendants failed to prevent his further harassment of and attacks against Jane Doe. As a result of the ongoing and persistent threat, Plaintiff Jane Doe was unable to participate normally or fully in the academic and extracurricular life of a ninth- and tenth-grader at Canton High School.

106. Plaintiff experienced an almost constant state of anxiety and fear throughout the duration of her freshman year, and well into her sophomore year, never knowing when John Roe might appear to harass or attack her, and lacking confidence in the adults charged with protecting her from such treatment.

107. Plaintiff suffered from extreme and ongoing mental health challenges, leading up to and flowing from her suicide attempt, as a result of Defendants' complete failure to respond to her numerous complaints or to protect her from John Roe's ongoing harassment.

*As Plaintiff's Complaints Escalated, the District Began to Retaliate Against Plaintiff*

108.    On November 8, 2017, SRO Colthurst called Plaintiff's mother to tell her that he had concluded his investigation and that he felt that Jane Doe had lied. He said there was no way she could have been on the bridge with John Roe during the September 19th incident based on his assessment of how long it would have taken each of them to walk across the bridge. He added that he also believed that Jane Doe was deliberately attempting to run into John Roe in the North Tower by arriving to school early.

109.    SRO Colthurst was not an employee of the District, nor was he the individual tasked under the District's Anti-Harassment Policy with conducting investigations into Plaintiff's complaints of discrimination. Upon information and belief, SRO Colthurst had no training on Title IX issues.

110.    SRO Colthurst ended by threatening Jane Doe that if she filed another "false" report, they would press felony charges against her.

111.    In or around the end of November 2017, Plaintiff's mother went to the Canton Police Department to pick up SRO Colthurst's report regarding the September 19th incident, and learned—*for the first time*—that there were two other reports authored by District SROs regarding Jane Doe's complaints.

112.    Due to Defendants' conduct and the severe and pervasive harassment that she experienced, Jane Doe continued to struggle emotionally in her junior year.

She was in a day-treatment program in the fall of 2018 and is currently not able to physically attend classes on campus because of severe anxiety and post-traumatic stress. The District's only accommodation has been to provide her with a few hours per week of off-site tutoring.  As a result, Plaintiff has not been able to fully participate in school or keep up with her academic curriculum.

113.   Jane Doe continues to experience depression, anxiety, and suicidal ideation as a result of John Roe's harassment and the District's failure to address it.

**COUNT I**
**VIOLATION OF TITLE IX**
**AS TO DEFENDANT PLYMOUTH-CANTON COMMUNITY SCHOOLS**
**(Sex Discrimination)**

114.   Paragraphs 1-113 are incorporated here.

115.   The acts, and failures to act, perpetrated against Plaintiff amounted to unlawful sexual harassment and discrimination on the basis of gender.  One or more administrators or officials of Defendant Plymouth-Canton Community Schools, with authority to take corrective action on Plaintiffs' behalf, had actual notice of said harassment and discrimination yet failed to adequately respond, in violation of the District's own policies and Title IX.   These failures amounted to deliberate indifference toward the unlawful sexual harassment and discrimination that had occurred, was occurring, or was likely to occur.

116.   In addition, the District engaged in sex discrimination in violation of Title IX in that it failed to provide any information on Title IX to Jane Doe; failed

to conduct any Title IX investigation of this matter; and also failed to provide appropriate interim or other measures to Jane Doe to ensure that her education would not be harmed as a result of the ongoing harassment. These failures amounted to deliberate indifference toward the unlawful sexual harassment and discrimination that had occurred, was occurring, or was likely to occur.

117.   Plaintiff Jane Doe has suffered damages, including financial damages, emotional distress and psychological harm.  In addition, as a result of Defendant Plymouth-Canton Community School's deliberate indifference, Plaintiff suffered loss of educational opportunities and/or benefits, and has incurred and will continue to incur attorney fees and costs of litigation.

### COUNT II
### VIOLATION OF TITLE IX AS TO
### DEFENDANT PLYMOUTH-CANTON COMMUNITY SCHOOLS
### (Retaliation)

118.   Paragraphs 1-117 are incorporated here.

119.   The District engaged in retaliation when it improperly allowed a School Resource Officer to threaten Plaintiff that if she filed another "false" report, the District would press felony charges against her — despite the fact that filing complaints regarding sexual harassment is conduct that is protected under state and federal law.

120. Jane Doe has suffered damages, including financial damages, emotional distress and psychological harm, and her education has been harmed as a result of the retaliation she has experienced.

## COUNT III
## SECTION 1983 VIOLATION AS TO
## DEFENDANTS BEAN, LETT, BARBEE, MOSHER, AND HEARD
## (14th Amendment)
## (42 U.S.C. § 1983)

121. Paragraphs 1-120 are incorporated here.

122. Under the Fourteenth Amendment, Jane Doe had the right as a public school student to personal security, bodily integrity, and equal protection of the law.

123. Defendants Bean, Lett, Barbee, Mosher and Heard were state actors, acting under color of state law.

124. Defendants subjected Jane Doe to violations of her right to personal security, bodily integrity, and equal protection of the law by failing to adequately carry out their responsibilities under Title IX, by failing to adequately train and supervise District staff regarding their Title IX obligations and manifesting deliberate indifference to the sexual harassment of Jane Doe.

125. Defendants further subjected Jane Doe to violations of her right to personal security, bodily integrity, and equal protection of the law by improperly delegating their Title IX responsibilities to School Resource Officers who were not trained in Title IX, were not the District's Title IX Coordinator responsible for

handling investigations into complaints of sex discrimination, and were not even school district employees.

126. Jane Doe has suffered damages, including financial damages, emotional distress and psychological damage, and damage to her education as a direct and proximate result of the Defendants' deliberate indifference to her Fourteenth Amendment rights.

## COUNT IV
### *MONELL* LIABILITY AS TO DEFENDANT PLYMOUTH-CANTON COMMUNITY SCHOOLS FOR
### FAILURE TO TRAIN AND SUPERVISE
### (14th Amendment)
### (42 U.S.C. § 1983)

127. Paragraphs 1-126 are incorporated here.

128. Plymouth-Canton Community Schools had and continues to have unconstitutional policies and practices, namely:

- failing to investigate evidence of or to properly address sexual harassment and discrimination against female students;

- failing adequately to train and supervise Plymouth-Canton Community Schools employees and agents with regard to Title IX and protecting female students from violations of their right to personal security, bodily integrity, and equal protection of the law; and

- delegating investigation responsibilities to school resource officers in violation of Title IX.

129. The District's policies and practices constituted disparate treatment of females and had a disparate impact on female students.

130.    At the time of the events described herein, Defendants Mosher and Heard were policymakers for the purpose of creating and implementing the school's unconstitutional policies and practices.

131.    These policies and practices constituted disparate treatment of females and had a disparate impact on female students.

132.    Defendants' actions and lack of actions proximately caused Jane Doe's damages, including financial damages, emotional distress and psychological damage, and damage to her education.

### COUNT V
### VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT
### AS TO PLYMOUTH-CANTON COMMUNITY SCHOOLS

133.    Paragraphs 1-132 are incorporated here.

134.    Plaintiff is a member of a protected class pursuant to the Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2101 et seq.

135.    The facilities operated by Defendant Plymouth-Canton Community Schools were and are an educational institution under the ELCRA, MCL 37.2401 et seq., and MCL 37.2301.

136.    Defendant's policies and practices, including failure to properly warn, train and/or educate its staff regarding the prevention of sexual harassment, and the failure to properly investigate reports of sexual harassment, have a disparate impact on Plaintiff as a female by subjecting her to increased levels of sex-based

discrimination on campus in comparison to male students, and by subjecting her to increased levels of emotional distress and other harm by virtue of Defendant's failures to promptly and appropriately address complaints of sexual harassment.

137.   Defendant Plymouth-Canton Community School's acts and omissions have resulted in harm to Plaintiff including physical and emotional harm, and harm resulting from Plaintiff's being denied privileges and opportunities that should be available to Plymouth-Canton students in violation of MCL 37.2103 et seq.; MCL 37.2701(a) and (f).

WHEREFORE, Jane Doe requests judgment in her favor and against Defendants, as follows:

A.   Compensatory damages for Jane Doe's emotional distress and psychological damage, damage to her education, career options, and reputation, and her family's unreimbursed out-of-pocket expenses incurred due to these circumstances;

B.   Punitive damages;

C.   Injunctive relief requiring Plymouth-Canton Community Schools to take effective steps to prevent sexual harassment, to fully investigate conduct that may constitute sex-based harassment or assault, and to mitigate the effects of sex-based harassment by eliminating any hostile environment that may arise from or contribute to it;

D.    Statutory interest;

E.    Costs; and

F.    Reasonable attorneys' fees.

Dated: January 17, 2019          By:    s/ Jennifer B. Salvatore

Jennifer B. Salvatore (P66640)
Nakisha Chaney (P65066)
SALVATORE PRESCOTT &
PORTER, PLLC
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
*salvatore@spplawyers.com*
*chaney@spplawyers.com*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANE DOE, a minor, by her next
friend and parent, E.L.,

|  |  |  |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Case No. 2:19-cv-10166 |
| | ) | |
| vs. | ) | |
| | ) | |
| PLYMOUTH-CANTON COMMUNITY | ) | Hon. |
| SCHOOLS, DANIELLE BEAN, | ) | |
| ANGEL LETT, MONTYNE BARBEE, | ) | |
| ELIZABETH MOSHER, and | ) | |
| HAL HEARD III, | ) | |
| | ) | |
| Defendants. | ) | |

---

## **JURY DEMAND**

Plaintiff demands a trial by jury in the above-captioned matter.

Respectfully Submitted,

Date: January 17, 2019

/s/ Jennifer B. Salvatore
Jennifer B. Salvatore (P66640)
Nakisha Chaney (P65066)
Salvatore Prescott & Porter PLLC
Attorneys for Plaintiff
105 E. Main Street
Northville, Michigan 48167
(248) 679-8711